RESSER, *Respondent,*

*v.*

BOISE-CASCADE CORPORATION et al, *Appellants.*

(No. 22575, SC 25420)

587 P2d 80

Bruce Williams, of Williams, Spooner & Graves, P.C., Salem, argued the cause and filed the briefs for appellants.

John S. Stone, of Hayter, Shetterly, Noble & Weiser, Dallas, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Holman, Howell, and Lent, Justices.

HOWELL, J.

Lent, J., concurring opinion.

**HOWELL, J.**

This is an action for damages resulting from personal injuries and property damage sustained by plaintiff when he collided with a railroad locomotive operated by defendant Boise-Cascade Corporation and its wholly owned subsidiary, defendant Valley & Siletz Railroad Company. The jury returned a verdict finding defendants to have been 63 per cent negligent and plaintiff to have been 37 per cent negligent. Plaintiff's damages were determined to be $129,377, and judgment was entered against defendants for 63 per cent of this sum, or $81,508.13. Defendants appeal.

The accident occurred on June 21, 1973, at a railroad crossing in Polk County. The road on which plaintiff was traveling intersects the railroad track at a right angle. Plaintiff testified that as he approached the crossing, he slowed his speed to approximately 45 miles per hour, and when he came within 400 feet of the crossing he slowed his speed again to approximately 40 miles per hour. Plaintiff first saw the train approximately 100 feet from the crossing. He applied his brakes, but his speed carried him into the side of the engine.

Plaintiff claimed his view of the approaching train was obstructed by a line of trees, shrubs, and bushes between the highway and the railroad tracks. Plaintiff also testified that he heard no warning from the train immediately prior to the collision.

The point at which the train crew saw plaintiff's truck, the speed of the train, and the point at which the engineer applied the brakes are all subject to dispute. Except for minor inconsistencies, the crew members generally agreed that the train was traveling between 8 and 10 miles per hour at the time the crew realized plaintiff was not going to stop, and that the engineer then applied the brakes immediately. Plaintiff, however, argues that this testimony is inconsistent with the distance that the train traveled beyond the point of impact.

[ 387 ]

On this evidence, the trial court concluded that the question of the relative fault of the parties should be submitted to the jury, pursuant to Oregon's comparative negligence law, ORS 18.470. Defendants assign as error: (1) the trial court's refusal to direct a verdict in favor of defendants; (2) the trial court's failure to instruct the jury that plaintiff was negligent as a matter of law; and (3) the trial court's instruction to the jury that the railroad had forfeited its right of way. The three assignments will be considered separately.

### 1. *Defendant's Motion for Directed Verdict*

Oregon's comparative negligence statute, ORS 18.470, provides in pertinent part:

> "Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. * * *."

In *Jordan v. Coos-Curry Elec. Coop.,* 267 Or 164, 515 P2d 913, 516 P2d 472 (1973), we discussed the role of court and jury in cases arising under this statute. We noted that:

> "Generally, the apportionment of negligence is for the jury and will not be upset except where it is manifest as a matter of law that the allocation is unreasonably disproportionate." 267 Or at 165, *quoting Skybrock v. Concrete Construction Co.,* 42 Wis 2d 480, 490, 167 NW2d 209 (1969).

Despite our holding in *Jordan,* defendant claims the trial court in the present case should have directed a verdict for defendants because "the jury's finding of negligence on the part of defendants could be based only on speculation." We disagree.

Plaintiff's complaint contained four specifications of negligence: (1) that the train was operated at an unreasonable speed; (2) that the train crew failed to

keep a proper lookout; (3) that the engineer failed to apply the brakes in a timely manner; and (4) that defendants failed to properly maintain their right of way. In analyzing the evidence to determine whether or not there existed a question of fact as to any of these specifications, the trial court was required to view the evidence most favorably to the plaintiff, giving him the benefit of every inference that could be drawn from the evidence. *Denley v. Mutual of Omaha,* 251 Or 333, 445 P2d 505 (1968). If reasonable minds could differ as to the relative fault of the parties on any of plaintiff's specifications of negligence, the motion for a directed verdict was properly denied.

■ Plaintiff's first three specifications can be considered together. Defendants' engineer testified that he first saw plaintiff's truck approaching the crossing when the train was 500 to 600 feet away from the crossing. It was not until the train was 100 to 150 feet from the crossing, however, that the engineer claimed he applied the emergency brake. The evidence showed that after the collision with plaintiff, the train continued on and came to rest 135 feet beyond the point of impact. Plaintiff testified that he did not hear any warning from the train immediately prior to the collision, but that he did hear a loud burst of air, similar to the sound emitted by the train's braking system, immediately after the collision. The engineer told the investigating police officer that under normal conditions the train, composed of the number of cars it was and traveling 15 miles per hour, could be stopped in 150 feet.

From this evidence, the jurors might reach a number of conclusions. They might conclude that the train crew failed to exercise due care in following the progress of plaintiff's truck and that no proper lookout was maintained. Alternatively, they might find that if the operators did see plaintiff in time to stop, they were negligent in waiting to apply the brake until it was too late. Finally, they might conclude that in light

of the distance the train traveled after impact, the speed of the train was unreasonable under the circumstances. Whichever of these conclusions the jury might draw, we cannot say that they are so unreasonable as to be "based only on speculation."

Of course, the mere fact that defendants may have been negligent does not by itself justify the trial court in submitting the case to the jury. Under ORS 18.470, it must appear that defendants' negligence was equal to or exceeded any negligence attributable to plaintiff. It is clear in the present case that plaintiff was not entirely free from negligence,[1] and the jury so found. Nevertheless, in light of the evidence reviewed above, we believe reasonable minds could differ over the relative fault of the parties, and we cannot say that "it is manifest as a matter of law" that plaintiff's negligence exceeded defendants'. *Jordan v. Coos-Curry Elec. Coop.*, *supra* at 165.

■ A different question, however, is presented by plaintiff's allegation that the defendants negligently failed to maintain the condition of their right of way. The evidence showed that a line of trees running parallel to the railroad tracks ended 300 feet from the crossing. For those last 300 feet, brush, grass, and weeds stood 4 to 5 feet tall. Plaintiff contends that defendants' failure to trim back this vegetation prevented him from seeing the train and prevented the crew members from seeing him. Defendants' locomotive, however, stood over 13 feet tall, and plaintiff offers no explanation of how brush and grass that was 4 to 5 feet tall could have concealed a 13-foot tall locomotive.[2] Absent some additional evidence of cau-

---

[1] *See* the discussion in Part 2 of this opinion.

[2] Plaintiff testified that there also were trees about 100 feet from the intersection that were cut down after the accident occurred. There was no evidence, however, that these trees were located within defendants' right of way.

sation, we agree with defendants that the trial court should not have submitted the specification of negligence to the jury.[3]

## 2. *Defendants' Requested Instruction*

■ Defendants next contend that the trial court erred in refusing to instruct the jury that plaintiff was negligent as a matter of law. Defendants correctly note that even in cases where the court cannot say as a matter of law that plaintiff's negligence exceeded defendant's, it still may conclude as a matter of law that plaintiff was negligent in some respect. In such cases, the court should instruct the jury that it must find plaintiff at least partially negligent, but that plaintiff may still recover if his negligence was not greater than defendant's. *See Sofich v. Hill,* 277 Or 327, 560 P2d 633 (1977).[4]

. At the time the accident occurred, ORS 483.104 provided in part that:

"Any speed in excess of the speeds designated in this section * * * shall be prima facie evidence of violation of ORS 483.102 [the basic speed rule]. The speeds designated in this section are:

"(1) Twenty miles per hour: * * *

"* * * * *.

---

[3] Plaintiff's failure of proof on this specification would not have justified the trial court in directing a verdict for defendant due to the other evidence of negligence discussed above. For the reasons stated in Part 3 of this opinion, however, this case must be retried. Consequently, we have discussed the specification here to avoid a similar error on retrial.

If plaintiff is able to show on retrial that the missing trees were within defendants' right of way, see n. 2 supra, we agree with plaintiff that the trial court would be justified in submitting the specification to the jury despite the absence of expert testimony. For the reasons stated in *Koch v. Southern Pacific Co.,* 266 Or 335, 513 P2d 770 (1973), we do not consider this to be a proper matter for expert testimony.

[4] We agree, however, with one court's observation that:

"Because of the very nature of the comparative negligence doctrine, situations in which directed verdicts will be appropriate will occur with even less frequency [than under the contributory negligence rule], particularly in cases where the plaintiff's own negligence is in issue." *Petroleum Carrier Corporation v. Gates,* 330 So 2d 751, 752 (Fla App 1976).

"(b) When approaching within 100 feet of a grade crossing of a railway, interurban railway or street railway where the driver's view of the crossing or of any traffic on such railway within a distance of 400 feet in either direction is obstructed."

Plaintiff's own testimony established that he was traveling 35 to 40 miles per hour at a point about 100 feet from the crossing. Plaintiff's testimony also established that a line of trees extending to a point 300 feet from the railroad crossing impaired his view. Defendants contend that plaintiff was therefore in violation of the basic speed rule at the time the accident occurred, and that under the doctrine of negligence per se the trial court should have instructed the jury that plaintiff was at least partially negligent as a matter of law.[5]

■ Under the doctrine of negligence per se, the violation of a statute raises a disputable presumption of negligence if the violation results in an injury to a member of the class of persons intended to be protected and the harm is of a kind the legislation was enacted to prevent. *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972). Once such a violation is shown, the burden shifts to the party who violated the statute to prove that he nevertheless acted reasonably.

■■ It is clear that ORS 483.104 was designed to prevent precisely the kind of accident that occurred in the instant case: a collision between an automobile and a train where the automobile driver's view of the train is for some reason obscured. Plaintiff offered no evidence to show that his speed was reasonable under the circumstances. On the contrary, plaintiff's only explanation for his speed was his inability to see the train, a factor that does not excuse the statutory

---

[5] After the date of the accident, but prior to the date of trial, ORS 483.104 was repealed by the legislature. 1975 Or Laws, ch 451, § 291. Plaintiff has not contested defendants' assumption that the statute established a standard of care to govern the facts of the instant case. Consequently, we have no occasion to consider what effect the repeal of a statute might have on the negligence per se doctrine in a case where the issue is properly raised.

violation but, rather, brings ORS 483.104 into play. Absent an adequate explanation for the violation of the basic speed rule, the trial court should have instructed the jury that plaintiff was at least partially negligent as a matter of law, and it was error for the court to refuse defendants' requested instruction to that effect.

### 3. *The Railroad's Right of Way*

Defendants' final assignment of error involves an instruction relating to right of way. The pertinent portion of the instruction states:

> "I next instruct you that if you find that the train had the initial right-of-way under the law just read you, but if you further find that the train crew thereafter failed to use ordinary and reasonable care under the circumstances or knew or should have known by the exercise of reasonable care the Plaintiff was unaware of the approaching train, then the right-of-way of the Defendant train would be forfeited in favor of the Plaintiff-motorist, and it would then be the duty of the train crew to yield the right-of-way to the Plaintiff subject to the Plaintiff's duty to thereafter use reasonable care. This again is a question of fact for your determination."

Defendants contend that this instruction was erroneous insofar as it indicated that the train crew had a duty to yield the right of way to plaintiff.[6]

In *Koch v. Southern Pacific Co.,* 266 Or 335, 513 P2d 770 (1973), this court disapproved the practice of treating railroad crossing cases as a special breed, and held that "[t]he duty of both railroad and motorist should be that of reasonable care under the attendant circumstances." 266 Or at 355. We believe the language in the instruction at issue here is inconsistent with both the letter and the spirit of *Koch,* and that the trial court erred in giving the instruction.

■ The notion of a "right of way," when used in connection with the responsibilities of persons on the

---

[6] We agree with defendants that the exception to this instruction that was taken at trial was sufficient to preserve the issue on appeal.

highway, implies an absolute right, one to which other users of the highway must "yield." The notion of such an absolute right, however, is necessarily inconsistent with the more flexible concept of "reasonable care under the circumstances." As this court stated in *Koch:*

> "It is not practical for the court to state, as a general rule, the particular acts required on the part of the railway to constitute ordinary care on the part of the latter for the proper safety of the traveler on the public highway crossing, or to state the particular acts required of the traveler for his own safety. The duties resting with each party depend on the conditions and circumstances relating to each case." 266 Or at 354-55, *quoting Clements v. Atchison, T. & S.F. Ry. Co.,* 124 Okla 13, 253 P 496, 498 (1927).

If a motorist sees or hears an oncoming train, ordinary care would dictate that he stop and allow the train to pass. No "right of way" rule is necessary to support this notion.[7] However, as Justice Holman observed in *Koch,* "People * * * usually * * * do not intentionally drive upon a railroad crossing immediately in front of a railroad train unless they are unaware that the train is there." 266 Or at 349. If this lack of awareness is a result of the negligence of the railroad, a motorist may fail to "yield the right of way," yet nevertheless be exercising ordinary care. In such a case, instructions phrased in terms of a "right of way" only serve to create confusion.

■ The inconsistency between the "right of way" concept and the reasonable care standard is further illustrated by the instructions the trial court gave in the case at bar. In instructing the jury that the railroad forfeited its right of way as soon as the crew realized plaintiff was unaware of the train, the trial court conveyed the impression that the crew had an absolute duty to stop the train at whatever point the crew recognized plaintiff's peril. Under *Koch,* however, the duty of the train crew was simply one of

---

[7] *See also* ORS 487.425.

reasonable care under the circumstances, and a jury might find this duty to have been satisfied even though the crew did not discover plaintiff's peril until it was too late to "yield the right of way." Consequently, the trial court should not have instructed the jury that the railroad's "right of way" was "forfeited" once the train crew realized plaintiff was unaware of the train. The court should have simply instructed the jury that both the plaintiff and the railroad had a duty to exercise reasonable care under the circumstances.

While certain of the erroneous instructions were favorable to defendants, we agree that the instruction assigned as error could have been prejudicial, for the reasons stated above. It follows that the case must be reversed for a new trial.

In summation, we hold: first, that the trial court correctly denied defendants' motion for a directed verdict; second, that the court erred in submitting to the jury plaintiffs' allegation that defendants negligently maintained their right of way; third, that the court erred in refusing to instruct the jury that as a matter of law plaintiff was at least partially negligent; and finally, that the court erred in instructing the jury that the railroad's "right of way" may have been "forfeited." The case is reversed and remanded for a new trial in conformance with this opinion.

Reversed and remanded.

**LENT, J.,** concurring.

I concur. With respect to the error in refusing to direct the jury that plaintiff was negligent as a matter of law, however, I believe that to be harmless error, because the jury found plaintiff to be negligent despite the want of instruction to that effect.